UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-80663-CIV-MARRA/MATTHEWMAN

NICOLE CENAT,

      Plaintiff,

vs.

U.S. BANK, N.A. as Trustee
for CMLT 2007-AMC2,

      Defendant.

_____/

## OPINION AND ORDER DENYING MOTION TO DISMISS

THIS CAUSE is before the Court upon Defendant's Motion to Dismiss the

Complaint (DE 12) and Defendant's Request for Oral Argument (DE 15).  The Court has

carefully considered the motions, response, reply, and is otherwise fully advised in

the premises.

## I. Background

Plaintiff Nicole Cenat ("Plaintiff") brings this two-count Amended Complaint

(DE 9, "Compl.") against Defendant U.S. Bank, N.A. as Trustee for CMLT 2007-AMC2

("U.S. Bank" or "Defendant") for violations of the Truth in Lending Act ("TILA"), 15

U.S.C. § 1601 *et seq*.

According to the allegations of the Complaint, Plaintiff owns a home in Palm

Beach County. (Compl. ¶ 7).  Defendant U.S. Bank was and is a creditor and assignee

as defined under 15 U.S.C. §§ 1602(g), 1641.  (*Id*. at ¶¶ 5-6).  U.S. Bank did not

originate the Note and Mortgage referenced in the Complaint.  U.S. Bank is not the

party to whom the Note and Mortgage were initially made payable on the face of the instrument(s).  (*Id*. at ¶ 2).  U.S. Bank acquired its interest by virtue of a voluntary assignment of the Note and Mortgage.  (*Id*. at ¶ 3).  CitiMortgage, Inc. ("Citi") is and was a loan servicer as defined in 12 U.S.C. § 2605(i)(2).  (*Id*. at ¶ 9).

On or about July 19, 2011, Citi received a written request to identify the owner or master servicer of Plaintiff's promissory note and to provide "an itemized statement of the full amount needed to reinstate the mortgage as of the date of the response along with an itemized pay-off statement."  (*Id*. at ¶ ¶ 20, 41).  On or about July 22, 2011, Citi responded in writing but did not provide the name, address or telephone number of the owner or master servicer of the obligation. (Compl. ¶ 23). Citi also did not provide the required pay-off statement within a reasonable time after receiving the request. (Compl. ¶ 42).  Citi is an employee and agent of U.S. Bank and is responsible for Citi's failure to properly respond to Plaintiffs.  (*Id*. at  ¶ ¶ 35-36).

Defendant moves to dismiss the Complaint, contending that (1) Plaintiff failed to make a qualifying request under 12 C.F.R. § 226.36; (2) U.S. Bank has no liability under § 1640 for Citi's alleged violations of § 1641(f)(2) and § 226.36(c)(1)(iii) because U.S. Bank is not a creditor; (3)  U.S. Bank has no liability under § 1641 for Citi's alleged failure to comply with § 1641(f)(2) or § 226.36(c)(1)(iii) because the violations were not "apparent on the face" of any "disclosure statement" or assigned loan documents and § 1641 does not impose liability on an assignee for a servicer's

violation; (4) there is no basis to apply agency principals or vicarious liability to TILA under the facts of this case; and finally, (5) even if the Court applies agency principals, there is no liability to impute from Citi to U.S. Bank.

Plaintiff responds that (1) the request under 12 C.F.R. § 226.36 was sufficient; (2) U.S. Bank has liability under § 1640 for Citi's alleged violations of § 1641(f)(2) and § 226.36(c)(1)(iii) because U.S. Bank is an assignee; (3) U.S. Bank has liability under § 1641 for Citi's alleged failure to comply with § 1641(f)(2) or § 226.36(c)(1)(iii) because the violations were "apparent on the face" of the disclosures and regardless, U.S. Bank was the owner of the loan at the time of the alleged violation by its agent Citi; (4) vicarious liability is applicable to TILA under the facts of this case ; and finally, (5) it is the act that is imputed - not liability.

## II.  Legal Standard

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal

citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 1950.  When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted.  *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984).

TILA is a consumer protection statute, and as such must be construed liberally in order to best serve Congress' intent and its remedial purposes.  *Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 703, 707 (11th Cir. 1998); *Brown v. CitiMortgage, Inc.*, 817 F. Supp. 2d 1328, 1334-35 (S.D. Ala. 2011) ("The Eleventh Circuit has emphasized the strong remedial purpose of TILA and has heeded continual admonitions that we construe TILA ... liberally in the consumer's favor") (citations and internal quotation marks omitted).  Moreover, in interpreting the relevant statute, the Court must look at TILA as a whole.  *See United States v. Boisdore's Heirs*, 49 U.S. 113, 122 (1850) ("In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy").

The Court should construe the statute "so as to avoid rendering superfluous any parts thereof." *Astoria Federal Savings & Loan Ass'n v. Solimino*, 501 U.S. 104, 112 (1991).

### III. Discussion

A.     **Qualifying Request under 12 C.F.R. 226.36(c)(1)(iii)[1]**

Defendant argues that Plaintiff failed to make a qualifying request for an "accurate statement of the total outstanding balance that would be required to satisfy the consumer's obligation in full as of a specified date." 12 C.F.R. 226.36(c)(1)(iii) (also known as part of "Regulation Z"). Defendant argues that Plaintiff's request sought information which was not covered by 12 C.F.R. 226.36(c)(1)(iii) and failed to include a reference to the provisions of Regulation Z or 12 C.F.R. 226.36(c)(1)(iii) in its title or body, or make use of the specific language of the provision itself, such that Citi could reasonably infer that the request was made pursuant to 12 C.F.R. 226.36(c)(1)(iii). As such, Plaintiff failed to trigger Citi's

---

[1]  Plaintiff's claim is brought pursuant to 12 C.F.R. 226.36(c)(1)(iii) which provides:

(c) Servicing practices.

(1) In connection with a consumer credit transaction secured by a consumer's principal dwelling, no servicer shall--

(iii) Fail to provide, within a reasonable time after receiving a request from the consumer or any person acting on behalf of the consumer, an accurate statement of the total outstanding balance that would be required to satisfy the consumer's obligation in full as of a specified date.

12 C.F.R. 226.36(c)(1)(iii).

obligations under 12 C.F.R. 226.36(c)(1)(iii), and Plaintiff's claim against U.S. Bank thereon is implausible on its face, and should be dismissed.

Indeed, Defendant asserts that Plaintiff's request deviated so far from the language of 12 C.F.R. 226.36(c)(1)(iii) that Plaintiff actually asked for something totally different than what 12 C.F.R. 226.36(c)(1)(iii) authorizes.  Defendant argues these terms are not even close to the language employed by the regulation.  The regulation speaks of the "outstanding balance required to satisfy the consumer's obligation in full," *i.e.*, the total amount to satisfy the debt completely, while Plaintiff's request seeks a "statement of the full amount needed to reinstate the mortgage," *i.e.*, the amount necessary to bring the mortgage out of default, "along with" an "itemized" payoff statement.  Defendant argues these are clearly two different things and that Plaintiff's request for an "itemized" payoff statement, and failure to specify a date for such payoff statement to cover, takes the second part of Plaintiff's request outside the scope of 12 C.F.R. 226.36(c)(1)(iii).

Plaintiff responds that her request (for "[a]n itemized statement of the full amount needed to reinstate the mortgage as of the date of your response, along with an itemized pay-off statement") was sufficient under the regulation.  Construing TILA liberally, as this Court must, the Court finds Plaintiff's request for "an itemized pay-off statement" to be the functional equivalent of asking for the total outstanding balance that would be required to satisfy Plaintiff's obligation.  When a creditor or its agent provides a pay-off statement to a debtor, it necessarily has to be presented as

of a particular date.  Plaintiff's request will not be deemed legally inadequate because she did not use the exact wording of the regulation.  *See, e.g., St. Breux v. U.S. Bank,* Nat. Ass'n, 12-61613-CIV, 2013 WL 331592 (S.D. Fla. Jan. 29, 2013) (borrower asked for a payoff statement, albeit inartfully, and his sentence included a reference to the date at which Seterus would respond, though somewhat ambiguous; such a request did not require "magic words" to trigger the servicer's obligation). Therefore, Defendant's motion to dismiss because Plaintiff failed to make a qualifying request is denied.

B.    <u>U.S. Bank's Liability as a Creditor and/or Assignee</u>

The Complaint seeks damages from U.S. Bank under § 1640(a), which, among other things, sets forth the factors for determining the amount of a damage award for any creditor who fails to comply with section 1641(f) or 1641(g).  Defendant argues that U.S. Bank has no liability under § 1640 for Citi's alleged violations of § 1641(f)(2) and § 226.36(c)(1)(iii) because U.S. Bank is not a creditor.[2]  In response to this

_____

[2] The term "creditor" refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property, or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness . . . .  15 U.S.C. 1602(f).  But § 1641(g) applies to a creditor that is the new owner or assignee of the debt.  *See Gale v. First Franklin Loan Svcs.,* 701 F.3d 1240, 1243 (9th Cir. 2012) ("In the 2009 amendments . . . Congress added § 1641(g), which suggests that the narrow definition of 'creditor' in § 1602 is no longer valid. Subsection (g) applies to a '*creditor* that is the *new owner or assignee* of the debt.' (Emphases added).  Given this broader definition which includes assignees, it makes perfect sense for Congress to refer in § 1640(a) to § 1641

argument, Plaintiff states she does not concede U.S. Bank's position, but for purposes of this motion, withdraws her allegation that U.S. Bank is a creditor.  Instead, Plaintiff will pursue the claim against U.S. Bank as an assignee of the original creditor.

U.S. Bank then argues it has no liability as an assignee because the violations were not "apparent on the face" of any "disclosure statement" or assigned loan documents and § 1641 does not impose liability on an assignee for a servicer's violation.  *Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 703, 708-09 (11th Cir. 1998) ("Congress specifically decided that assignee creditors will only be liable for TILA violations that are apparent on the face of the disclosure statement"); *Parker v. Potter*, 232 Fed. Appx. 861, 865 (11th Cir. 2007) (finding that TILA "provides for civil liability against assignees only where a violation is apparent on the face of the disclosure statement").

Hence, the Court must determine whether Plaintiff has alleged sufficient facts to support the conclusion that the disclosure violations were apparent on the face of the disclosure statement.  TILA provides that "a violation apparent on the face of the disclosure statement includes, but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms

_____

provisions whose effect is limited to assignees.")

required to be used by this subchapter."  15 U.S.C. § 1641(a).  Courts have held that

a violation is apparent if it is "obvious, evident, or manifest; ... open to view, plain,

[or] patent."  *Holcomb v. Fed. Home Loan Mortg. Corp.*, 10-81186-CIV, 2011 WL

5080324 (S.D. Fla. Oct. 26, 2011) (quoting *Ritter v. Durand Chevrolet, Inc.*, 932

F.Supp. 32, 35 (D. Mass. 1996) (internal citations omitted).  In contrast, a disclosure

violation is not apparent on the face of the disclosure statement when it is apparent

"only by virtue of special knowledge, whether about the practices of other firms ...

or its own practices."  *Balderos v. City Chevrolet*, 214 F.3d 849 (7th Cir. 2000).

In the instant Amended Complaint, there are no allegations specifically

addressing whether the violations are apparent on the face of the disclosure

statement or any other document.  Plaintiff contends, however, "[w]hether an

assignee's liability is expressly limited to violations that are 'apparent on the face' of

assigned loan documents is irrelevant at this point as the subject violations were

indeed 'apparent on the face.'" DE 13 at 7.

Recently, Judge William P. Dimitrouleas carefully considered this issue of

disclosure documents and assignee liability, which decision this Court adopts and

incorporates into this Order.  In *St. Breux v. U.S. Bank, Nat. Ass'n*, 12-61613-CIV, 2013

WL 331592 (S.D. Fla. Jan. 29, 2013), Judge Dimitrouleas elaborated on his reasoning

in *Runkle v. Federal National Mortgage Association*, No. 12–61247, 2012 WL 5861803

(S.D. Fla. Nov.16, 2012), where, when confronting the issue of whether an assignee

could be liable for its servicer's § 1641(f)(2) errors, the Court found that principles of

vicarious liability applied:

First, TILA provides that assignees are liable just like creditors, so long as the TILA violation is "apparent on the face of the disclosure statement." § 1641(a).  Setting aside the "apparent on the face" language for a moment, subsection (a) makes it apparent that assignees can be liable like creditors.  Such a result makes sense.  The only difference between a creditor and an assignee is that the creditor originates the loan and then owns the obligation, whereas an assignee only receives the ownership of the loan without having originated the loan.  *See* 15 U.S.C. §§ 1602(g), 1641(a).  The type of conduct that violates TILA's informational request provisions like asking for a payoff statement, however, only arises post-origination.  The distinction between originator and assignee therefore is irrelevant.

From a policy perspective, if a creditor is going to be liable for employing an irresponsible servicer, an assignee, who is acting just like a creditor, should also be liable for its irresponsible servicers.  In the assignment setting, the servicer is acting as the assignee's agent in the same way that a servicer is acting as a creditor's agent had there been no assignment.  Servicers in both cases are trying to make sure that loan payments are received as required under the obligation's terms.  Because the relationship is the same, liability principles should be the same.

Furthermore, just as it did not make sense to absolve all parties of liability in the creditor context, *see Khan v. Bank of New York Mellon*, 849 F. Supp. 2d 1377, 1382 (S.D. Fla. 2012), it similarly makes no sense to absolve the assignee of all liability.  Once the assignee receives the assignment, the assignor is most likely out of the picture.  If an assignee were not responsible for its servicer's conduct, no party could be liable.  *Id*. There has to be some liability in order for it to make sense for Congress to have created a cause of action for violating TILA, and it makes sense to hold the assignee liable.

The wrinkle, which was set aside for a moment, is that for an assignee to be liable, the TILA violation must be "apparent on the face of the disclosure statement." § 1641(a).  It is apparent from the face of Seterus' response that no payoff statement was attached.  Fannie Mae argues that § 1641(a) means that an assignee can only be liable for documents created at the time of the origination of the loan (Fannie

Mae's interpretation of "disclosure statements"), which documents were assigned to the assignee.  If so, then an assignee would not be liable for a post-assignment TILA error.  The Court must resolve whether § 1641(a) prohibits a plaintiff from placing liability on an assignee after the assignment has been completed, such as when an assignee's servicer violates TILA.

The Court does not believe that assignees are only liable for lending errors arising prior to the assignment.  Such a rule would allow assignees to retain the sloppiest servicers without any risk. The Court finds support for the imposition of vicarious liability from sister district courts.

In *Rinegard-Guirma v. Bank of America NA*, 10–cv–01065, 2012 WL 1110071, at *9 (D. Or. Apr.2, 2012), the assignee argued that § 1641(a) limited its liability for botched post-assignment informational requests. The court acknowledged that "a servicer's failure to provide information to a borrower about the owner of her loan in violation of § 1641(f)(2) is not the type of defect that would be apparent on the face of a disclosure statement, since a servicer's role only begins after disclosures are made." *Id*. at *9.  The court found, however, that an interpretation of TILA that did not hold assignees liable would "conflict with the purpose of Congress' 2009 TILA amendment, other statutory language within TILA, and case law recognizing the possibility that assignees of creditors can also be held liable for servicer's § 1641(f)(2) violations." *Id*. at *10.  Citing *Khan*, the court noted that assignees obviously can be liable for failing to disclose information, pointing to the rule that servicers who are also assignees may be held liable for violations of § 1641(f)(2).  *Id*.

Another court has also found that assignees can be vicariously liable for TILA violations.  In *Consumer Solutions REO, LLC v. Hillery*, No. C–08–4357, 2010 WL 1222739, at *3 (N.D. Cal. 2010), the court also recognized that information nondisclosure had nothing to do with a disclosure statement *per se*.  That court found that the limitation in § 1641(a) did not apply when another section like § 1641(f)(2) created liability.  "In other words, § 1641(a) addresses horizontal liability between predecessor and successor whereas § 1641(f)(2) addresses potential vertical liability as between agent and principal." *Id*.

Notwithstanding § 1641(a)'s limitation of assignee liability to errors apparent on the face of "disclosure statements," the Court finds that *assignees can indeed be liable for their servicer's nondisclosures that violate TILA.*  The Court's position makes sense of Congress's attempt to allow borrowers to find the owners or master servicers of their obligation.  It makes assignees, who are essentially just like creditors at the point at which a borrower is asking questions about a loan, liable for the faults of those they contract with to service their loans.  This encourages proper disclosure.  As have other courts before it, this Court construes the statutory language of § 1641(a) in context to find assignee vicarious liability.  *Runkle*, No. 12–61247, 2012 WL 8561803 at *6–7.

To this reasoning, the Court would merely reemphasize that "disclosure statement" is not defined in § 1641(a) and that term can be construed to encompass postassignment disclosures.  The Court acknowledges that many of the instances in TILA where disclosures are mentioned address situations at the inception of the creditor-debtor relationship.  *E.g.* 15 U.S.C. § 1604 (discussing model disclosure forms for mortgage loan transactions).  But not all references to disclosures occur in the pre-assignment context.  When Congress amended TILA in 2009, it added § 1641(g).  *See* Helping Families Save Their Homes Act of 2009, Pub.L. No. 111–22 § 404, 123 Stat. 1632, 1658.  That section states, "In addition to other *disclosures* required by this title," whenever a mortgage loan is sold, transferred, or assigned, "the creditor that is the new owner or *assignee* " must provide the obligor with contact information.  15 U.S.C. § 1641(g) (emphasis added).  Congress then created a private right of action for violating this new subsection, as well as for violating 1641(f)(2).  *See id.*

As the 2009 amendments demonstrate, Congress considered postassignment informational disclosures to be disclosures within the purview of TILA.  By the plain terms of § 1641(g), assignees who fail to make that informational disclosure can be liable.  There is no limitation of the term "disclosure statement" to mean only those disclosures made initially between the borrower and original creditor.  The new § 1641(g) emphatically creates liability purely for the assignee's own disclosures or lack thereof.  At the very least, the 2009 amendments broadened the meaning of "disclosure statement" to include disclosures made by the assignee post-assignment.  The Court concludes that when an assignee's servicer fails to make a disclosure under § 1641(f)(2), then the error is

apparent from the face of that particular disclosure statement and an
assignee may be liable.

*St. Breux v. U.S. Bank, Nat. Ass'n*, 12-61613-CIV, 2013 WL 331592, *5-7 (S.D. Fla. Jan.
29, 2013) (assignee of a consumer obligation may be vicariously liable for its agent's
post-assignment violation of TILA disclosure provision requiring a loan servicer, in
response to a consumer obligor's request, to identify the owner or master servicer for
the obligation); *see also*, *Kissinger v. Wells Fargo Bank, N.A.*, 888 F. Supp. 2d 1309
(S.D. Fla. 2012) ("This Court chooses to follow the reasoning of the courts finding
vicarious liability.")

Plaintiff alleges that U.S. Bank is vicariously liable for Citi's failure to respond
properly to her request.  Thus, the alleged "error is apparent from the face of the
particular disclosure statement" provided to Plaintiff and U.S. Bank, as an assignee,
may be liable.  Plaintiff has stated a cause of action against U.S. Bank for violations
of § 1641(f)(2) and § 226.36(c)(1)(iii).  *See* Compl. ¶ 36 ("U.S. Bank is responsible for
Citi's failure to respond properly to Plaintiff's request since Citi was acting in
furtherance and within the scope of its employment for U.S. Bank").

All of Defendant's other arguments are addressed within the discussion above
and are rejected.  Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss the Complaint (DE 12) is DENIED; and Defendant's Request for Oral Argument (DE 15) is DENIED AS MOOT.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 18th day of March, 2013.

_____
KENNETH A. MARRA
United States District Judge